IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID GIANNINI, individually and on behalf of all others similarly situated and in the interest of the general public of the State of California,<br><br>    Plaintiff,<br><br>   v.<br><br>NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY, a Wisconsin company; NORTHWESTERN MUTUAL – SAN FRANCISCO BAY AREA GROUP, INC., a California corporation; and JOHN GOODENOUGH, an individual,<br><br>    Defendants.<br>_____/ | No. C 12-77 CW<br><br>ORDER DENYING PLAINTIFF'S MOTION TO REMAND (Docket No. 16) |

    Plaintiff David Giannini moves to remand this putative class action to state court. Defendant Northwestern Mutual Life Insurance Company, SFBAG Insurance Services, Inc., sued as Northwestern Mutual – San Francisco Bay Area Group, Inc., and John Goodenough oppose the motion. The Court took Plaintiff's motion under submission on the papers. For the reasons set forth below, the Court DENIES Plaintiff's motion.

BACKGROUND

    On December 5, 2011, Plaintiff filed the instant lawsuit against Defendants in the Superior Court in the County of San Francisco. Plaintiff seeks to represent a class defined in his complaint as "all current and former [sales and financial representatives] who work or worked at any office within Defendant San Francisco Bay Area Group's direction within four years prior

to the date of filing of this Complaint." Compl. ¶ 27. Plaintiff alleges that Defendants misclassified Plaintiff and the putative class members as independent contractors instead of as employees and, among other things, failed to pay them overtime, did not provide them with meal and rest periods and failed to pay waiting time penalties to former employees.

On January 5, 2011, Northwestern Mutual removed this action to federal court, alleging federal jurisdiction under the Class Action Fairness Act of 2005 (CAFA). On that date, the San Francisco Bay Area Group and Goodenough consented to the removal and adopted Northwestern's removal notice as their own.

## LEGAL STANDARD

A defendant may remove a civil action filed in state court to federal district court so long as the district court could have exercised original jurisdiction over the matter. 28 U.S.C. § 1441(a). Title 28 U.S.C. § 1447(c) provides that if, at any time before judgment, it appears that the district court lacks subject matter jurisdiction over a case previously removed from state court, the case must be remanded. On a motion to remand, the scope of the removal statute must be strictly construed. Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992). "The 'strong presumption' against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." Id.; see also Wash. State v. Chimei Innolux Corp., 659 F.3d 842, 847 (9th Cir. 2011) ("The burden of establishing removal jurisdiction, even in CAFA cases, lies with the defendant seeking removal.")). Courts should resolve doubts as to removability in

2

favor of remanding the case to state court.  Gaus, 980 F.2d at 566.

## DISCUSSION

Plaintiff argues that Defendants have not satisfied CAFA's five million dollar amount-in-controversy requirement and that, even if they did, the local controversy exception to CAFA applies.

I.   Amount-in-controversy requirement

When assessing whether a defendant has met the amount in controversy requirement, "'[t]he ultimate inquiry is what amount is put 'in controversy' by the plaintiff's complaint, not what a defendant will actually owe.'"  Jasso v. Money Mart Express, Inc., 2012 U.S. Dist. LEXIS 27215, at *6 (N.D. Cal.) (quoting Korn v. Polo Ralph Lauren Corp., 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008)).[1]  Where, as here, "the plaintiff fails to plead a specific amount of damages, the defendant seeking removal 'must prove by a preponderance of the evidence that the amount in controversy requirement has been met.'"  Lowdermilk v. United States Bank Nat'l Assoc., 479 F.3d 994, 998 (9th Cir. 2007) (quoting Abrego Abrego v. The Dow Chemical Co., 443 F.3d 676, 683 (9th Cir. 2006)).  "'Under this burden, the defendant must provide evidence

---

[1] Thus, Plaintiff's argument that Defendants should later be estopped from contending that damages are less than five million dollars is unavailing.  That this amount is at issue in this case does not mean that Plaintiff ultimately will be able to prove that the class is entitled to it.  See, e.g., Rippee v. Boston Mkt. Corp., 408 F. Supp. 2d 982, 986 (S.D. Cal. 2005) (citing Scherer v. Equitable Life Assurance Soc'y of the United States, 347 F.3d 394, 397-99 (2nd Cir. 2003)) ("the ultimate or provable amount of damages is not what is considered when determining the amount in controversy; rather, it is the amount put in controversy by the plaintiff's complaint").

3

that it is "more likely than not" that the amount in controversy' satisfies the federal diversity jurisdictional amount requirement." Abrego Abrego, 443 F.3d at 683 (quoting Sanchez v. Monumental Life Ins. Co., 102 F.3d 398, 404 (9th Cir. 1996)). When it is not "'facially apparent' from the complaint that the jurisdictional amount is in controversy," a "court may consider facts in the removal petition, and may require parties to submit summary-judgment-type evidence relevant to the amount in controversy at the time of removal." Singer v. State Farm Mut. Auto. Ins. Co., 116 F.3d 373, 377 (9th Cir. 1997) (internal quotations omitted). While Defendants "are not required to research, state, and prove the plaintiff's claims for damages, . . . a court cannot base a finding of jurisdiction on a defendant's speculation and conjecture." Roth v. Comerica Bank, 799 F. Supp. 2d 1107, 1117-1118 (C.D. Cal. 2010) (internal quotations and formatting omitted).

Defendants contend that the requisite amount is put into controversy by just four of Plaintiff's nine asserted claims and his request for attorneys' fees. The Court agrees.

A. Claim for unpaid overtime

Defendants calculate that Plaintiff placed at least $2,516,400 at issue through this claim. Defendants use the applicable minimum wage under California law, eight dollars per hour, to calculate an overtime pay rate of one and a half times that hourly rate, or twelve dollars per hour. Defendants then multiply that figure by the number of weeks that class members worked during the class period, 27,960 weeks. Finally, Defendants

4

multiply the result by five days per work week and by ninety minutes of overtime per day.[2]

Defendants have proffered adequate evidence to support each step of this calculation. Mr. Paschall attests that the four hundred class members worked at least 27,960 work weeks during the class period, based on his review of Northwestern Mutual's business records. Plaintiff argues that Defendants should have excluded from their calculations the hours worked by employees who in fact made more than twelve dollars per hour or who were "treated as true independent contractors," because they cannot state a claim for unpaid overtime. However, Plaintiff defines his class to include "all current and former" sales and financial representatives who worked for Defendants during the relevant time period, with no such exclusions, and makes allegations that class members were "uniformly" treated, including that Defendants misclassified class members as independent contractors and "that

---

[2] Plaintiff objects to the admissibility of several declarations offered by Defendants in support of their calculations. The Court OVERRULES his objections.

Defendants have laid an adequate foundation for the admissibility of the declarations of Jason L. Paschall and Kathryn Raphael pursuant to the business records exceptions to the hearsay rule. Further, to the extent that Plaintiff contends that Defendants should have offered the records themselves, courts frequently accept declarations summarizing business records when analyzing a motion to remand under the preponderance standard. See, e.g., Jasso, 2012 U.S. Dist. LEXIS 27215, at *11-12 (overruling best evidence objection to declaration summarizing business records); Wilson v. Best Buy Co., 2011 U.S. Dist. LEXIS 14400, at *4-5 (E.D. Cal.) (same).

Defendants have also laid an adequate foundation for the declarations of Andrew Miner and Rachel Mangas Moniz, who provide evidence of their personal knowledge of the facts to which they attest. Accordingly, Plaintiff's challenges to the Miner and Moniz declarations more properly go to their weight, not their admissibility.

they were not compensated for overtime at any time by Defendants." See, e.g., Compl. ¶¶ 27, 30(a), 36, 40.  Plaintiff may not defeat this Court's jurisdiction by disregarding the allegations in his complaint.

Defendants have also offered sufficient evidence to support their assumption that the average week worked by class members consisted of at least five work days.  Specifically, Ms. Moniz and Mr. Miner attest that, based on their observations, class members in the San Francisco Bay Area Group offices regularly work at least five days per week.  While Plaintiff argues that Defendants could have produced better evidence of this fact from their business records, Plaintiff offers no evidence to contradict the first-hand observations of Ms. Moniz and Mr. Miner.

Further, Defendants reasonably assume that class members worked at least one and a half hours of overtime each work day, based on the contentions in Plaintiff's complaint.  Plaintiff alleges that "Reps, including Mr. Giannini, were required to appear and work at Defendants' offices every work day from 7:30a.m. to at least 5:00 p.m.," or nine and a half hours per work day, Compl. ¶ 17, in excess of eight hours per day or forty hours per week, id. at ¶ 38, and were routinely denied meal and rest breaks, id. at ¶ 45.  The allegations in Plaintiff's complaint support Defendants' use of a one hundred percent violation rate for each work day, as well as their estimate of one and a half hours of overtime on each of these days.

Accordingly, the Court finds that Defendants have established by a preponderance of the evidence that at least $2,516,400 is in controversy through this claim.

6

In the alternative, Defendants offer evidence that class members were paid an hourly wage of substantially more than eight dollars per hour. Defendants calculated the average hourly wage for sales and financial representatives in the five offices comprising the San Francisco Bay Area Group for 2009 as $38.14 and for 2010 as $43.20. To make this calculation, Defendants assumed that class members were compensated for a forty-hour work week, which is reasonable based on the allegations in Plaintiff's complaint. See, e.g., Compl. ¶¶ 37-40 (class members routinely worked in excess of forty hours in any one work week and were not compensated for hours in excess of forty). While Defendants have not provided an average hourly rate for the entire class period, there is no reason to believe that this rate decreased substantially in 2011. Further, even if the average hourly wage for the class period were nineteen dollars per hour--less than half the average wage for 2009, which was less than 2010--this claim alone would place more than five million dollars at issue.

B. Claim for failure to prove meal and rest breaks

Defendants calculate that Plaintiff's claims for overtime meal and rest break violations place into controversy at least $2,236,800, based on the minimum wage. Defendants calculate the amount in controversy for meal break violations by taking the product of 27,960 work weeks, five days per work week, one missed meal period per day--which is compensated at a rate of one hour of pay per missed meal--and eight dollars per hour. Opp. at 15. Defendants use the same formula to calculate the amount put in controversy for the claim based on rest break violations. Id.

7

1    For the reasons previously stated, the Court finds that this
2 calculation is not arbitrary or conjectural.  Further, Defendants'
3 assumption of a one-hundred-percent violation rate on days worked
4 by class members for these claims is supported by the allegations
5 in the complaint.  See, e.g., Compl. ¶¶ 45, 47 (stating that
6 "Plaintiff Giannini and the Class routinely were or are forced by
7 Defendants to work in excess of five (5) or ten (10) hours without
8 a mandatory meal or rest break of any kind," "Defendants
9 systematically failed to inform or refused to inform Plaintiff
10 Giannini and the Class of their right to take meal and rest
11 breaks," and "Defendants actively discouraged [class members] from
12 taking any breaks whatsoever during the work day").
13   C. Claim for waiting time penalties
14    In their notice of removal, Defendants calculate that
15 Plaintiff's waiting time penalty claim under California Labor Code
16 section 203 places into controversy $370,560, utilizing the
17 minimum wage.  Under section 203, if an employer fails to pay, at
18 the time of termination, the wages of an employee who is
19 discharged or quits, the employer may be required to pay his or
20 her daily wages at his or her regular pay rate for up to thirty
21 days.  Thus, Defendants calculate the amount put in issue by this
22 claim by multiplying the number of class members who left their
23 employment during the class period by their daily work rate, or
24 eight hours at eight dollars per hour, and then by thirty days.
25 Opp. at 16.
26    In their calculations, Defendants assume that none of the
27 class members who left their employment during the class period,
28 193 individuals, were given their unpaid wages and overtime pay at

8

time of termination. Plaintiff argues that Defendants improperly assume that all class members were owed something at the end of their employment. However, this assumption is properly based on the allegations in Plaintiff's complaint, which suggest that all class members were denied at least some form of compensation during the course of their employment and that the underpayment was not corrected at any point. Among other things, Plaintiff alleges that class members routinely had to work nine and a half hours on each work day, that they were never compensated for that overtime that they were routinely deprived of meal and rest breaks, and that they were not paid additional wages for the meal and rest periods missed. Thus, Defendants can properly assume that all members of the former employee subclass were entitled to maximum waiting time penalties under Labor Code section 203.

D. Demand for attorneys' fees

Attorneys' fees are properly included in the amount in controversy for purposes of evaluating jurisdiction under CAFA. Guglielmino v. McKee Foods Corp., 506 F.3d 696, 700 (9th Cir. 2007). Further, the Court agrees that, "[w]here the law entitles the prevailing plaintiff to recover reasonable attorney fees, a reasonable estimate of fees likely to be incurred to resolution is part of the benefit permissibly sought by the plaintiff and thus contributes to the amount in controversy." Brady v. Mercedes-Benz USA, Inc., 243 F. Supp. 2d 1004, 1011 (N.D. Cal. 2002).

Defendants calculate that Plaintiff has placed $1,280,940 in controversy through his demand for attorneys' fees. Defendants base this amount by multiplying by twenty-five percent the sum of the amounts placed in controversy by the four claims discussed

9

previously. "[T]he Ninth Circuit 'has established 25% of the common fund as a benchmark award for attorney fees.'" Jasso, 2012 U.S. Dist. LEXIS 27215, at *20-21 (quoting Hanlon v. Chrysler Corp., 150 F.3d 1011, 1029 (9th Cir. 1998). Accordingly, "it is not unreasonable for [Defendants] to rely on this estimate using the common fund method under the circumstances here." Id. at *21.

Further, the Court notes that Defendants have sufficiently demonstrated that the jurisdictional amount is in controversy without considering attorneys' fees, by their calculations based both on the minimum wage and on the actual average wages earned by class members in 2009 and 2010.

II. Local Controversy Exception

Plaintiff argues that, even if the amount in controversy requirement is met, the local controversy exception to CAFA jurisdiction precludes this Court from exercising jurisdiction over this case. The local controversy exception requires a federal district court to decline to exercise jurisdiction over cases in which certain requirements are met, including that "during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons." 28 U.S.C. § 1332(d)(4)(A)(ii). A plaintiff seeking remand has the burden of showing that the local controversy exception applies. Serrano v. 180 Connect, Inc., 478 F.3d 1018, 1024 (9th Cir. 2007).

10

Defendants have identified two previously filed class actions, each of which fulfills the criteria of 28 U.S.C. § 1332(d)(4)(A)(ii).[3]

The first, Lint v. Northwestern Mutual Life Insurance Co., Case No. 09-1373 (S.D. Cal.), was a class action, initiated on June 25, 2009, on behalf of national and California classes of sales and financial representatives of Northwestern Mutual Life. In the suit, the plaintiffs alleged that the company had improperly labeled class members as independent contractors instead of employees and had, among other things, deprived them of overtime wages for their work beyond forty hours per week. The plaintiffs asserted claims based on various California statutes and the Federal Fair Labor Standards Act. According to Plaintiff, no class was certified in Lint, and the case was terminated following an unopposed motion to dismiss. Bradshaw Decl. ¶ 4.

The second, Fossum v. Northwestern Mutual Life Insurance Co., Case No. 10-2657 (N.D. Cal.), was filed in this district on June 17, 2010 on behalf of persons employed by Northwestern Mutual as financial representatives or other similarly situated employees in the state of California. The plaintiff in Fossum also alleged that Northwestern Mutual improperly categorized the putative class members as independent contractors instead of employees and asserted various claims arising under California state law, including for waiting time penalties and unfair competition.

---

[3] Defendants request that the Court take judicial notice of the complaints filed in both actions. Plaintiff does not oppose the request. Because the accuracy of these documents can be ascertained by reference to a source that cannot be readily questioned, the Court grants Defendants' request and takes judicial notice of these filings.

11

According to Plaintiff, no class was certified in Fossum, which was transferred to the Southern District of California and consolidated with Lint prior to the dismissal of that action. Bradshaw Decl. ¶ 3.

The factual allegations in the Fossum and Lint actions are similar to those in Plaintiff's complaint in this case. Further, the Court is not persuaded by Plaintiff's contention that the Fossum and Lint actions do not fulfill the requirements of subsection (d)(4)(A)(ii) because a class was not certified in either case and neither case survives today. Plaintiff cites no cases in support of his argument. The plain language of subsection (d)(4)(A)(ii) demonstrates that it is concerned with whether the earlier filed cases contained "the same or similar factual allegations," not what procedural stage the earlier cases reached.

Plaintiff also asserts that the earlier cases were concerned with claims brought on behalf of national classes, unlike this case, which alleges violations of California laws, making it a more local dispute. This argument fails for several reasons. First, it is inaccurate; both earlier actions were brought on behalf of California classes, at least in part, and both alleged violations of California law. Further, the plain text of the statute establishes that the requirement is concerned with whether the complaints had the same or similar factual allegations, not whether they had the same or similar causes of action or legal theories. See also Jadeja v. Redflex Traffic Sys., 2010 U.S. Dist. LEXIS 130248, at *6-7 (N.D. Cal.) (Alsup, J.) (rejecting the plaintiff's attempt to "focus on legal theories rather than the

12

factual allegations in play" as clearly contrary to the plain language of the statute and noting that the Senate Judiciary Committee had specifically stated that "'the inquiry under this criterion should not be whether identical (or nearly identical) class actions have been filed'" but is instead "'<u>whether similar factual allegations have been made against the defendant in multiple class actions, regardless of whether the same causes of action were asserted</u> or whether the purported plaintiff classes were the same (or even overlapped in significant respects).'") (quoting S. Rep. No. 109-14, at 41 (2005), as reprinted in 2005 U.S.C.C.A.N. 3, 39) (emphasis in original).

Because Plaintiff has not met his burden of demonstrating that "no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons" during the three years before this case was filed, the Court finds that the local controversy exception to its jurisdiction under CAFA does not apply.

## CONCLUSION

For the reasons set forth above, the Court DENIES Plaintiff's motion to remand (Docket No. 16).

IT IS SO ORDERED.

Dated: 4/30/2012

CLAUDIA WILKEN
United States District Judge

13